The Law Office of
# RALPH A. SOMMA
175 West Main Street, Suite One
Babylon, NY 11702

Tel.: (631) 587-1699             E-mail: rsomma@sommafirm.com
Fax: (631) 587-1760             www.sommafirm.com

Hon. A. Kathleen Tomlinson
United States District Court
100 Federal Plaza
Central Islip, NY 11722Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

February 8, 2017

        Re:    Maldonado, et al. vs. Joe's Complete Tree Service, Inc., et al.
                Case No. 16-cv-3848-LDW-AKT

Dear Magistrate Judge Tomlinson:

       This office represents the Defendants in the above referenced case. I write on behalf of all parties to respectfully request the court's approval of the Settlement Agreement attached hereto as **Exhibit A**.

       Plaintiffs Jorge Maldonado ("Maldonado"), Jonathan Barahona ("Barahona"), and Mauricio Diaz ("Diaz") commenced this action against Defendants Joe's Complete Tree Service, Inc. ("Joe's Tree") and Joseph Massaro, Jr. ("Massaro") on July 11, 2016 asserting overtime wage claims under the Fair Labor Standards Act of 1938 ("FLSA"), *as amended*, 29 U.S.C. §§ 201, *et seq.* and New York State Labor Law ("NYLL") § 190 *et seq*. In addition, Plaintiff asserted notice and recordkeeping claims under the NYLL. Defendants timely answered the Complaint denying all Plaintiffs' claims and asserting several affirmative defenses.[1]

       Over the course of the next several weeks, the parties – through their respective counsel – engaged in lengthy settlement discussions. Detailed spreadsheets were prepared and exchanged demonstrating the basis of the calculations upon which those proposals were based.

       At the initial conference held before Your Honor on October 4, 2016 the parties advised the court they agreed to participate in the court-annexed mediation program and an Order was issued so referring the case.

       In advance of mediation, and in furtherance of a prompt and efficient resolution of this case, Defendants provided Plaintiffs with copies of all work orders from the relevant period. In addition, Plaintiffs were provided Joe's Tree's tax returns, bank statements and other financial data demonstrating Defendant's dire financial status and that Joe's Tree did not meet the annual gross revenue threshold under the FLSA.

       On November 16, a mediation session was conducted with mediator Raymond Nardo, Esq. whom the parties jointly selected for that purpose. While the session did not immediately result

---

[1] Although the Complaint was drafted as a collective action pursuant to the FLSA, 29 U.S.C. § 216, the issue of certification was never litigated and the matter was settled with the individual plaintiffs.

in a resolution, the parties continued their settlement discussions aided by Mr. Nardo.

Finally, on January 17, 2017, the parties reached an agreement to resolve Plaintiffs claims in exchange for the payment of $40,000.00 to be distributed as follows:

a. **Wages:**
  **Jorge Maldonado** $12,646.67
  **Jonathan Barahona** $ 6,500.00
  **Mauricio Diaz** $ 6,500.00
  **Total Wages:** $ 25,646.67
b. **Costs:** $ 1,020.00
c. **Attorneys' Fees:** $ 13,333.33

  **Total Settlement Amount** $ 40,000.00

In order to memorialize their agreement and mutual desire to resolve this dispute without further resort to costly litigation, the parties entered into the attached Settlement Agreement and Release.

The Second Circuit Court of Appeals confirmed that settlements of FLSA cases must be approved by the court. *See Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015). A number of courts in this district have instructed that approval of the settlement of an individual FLSA claim depends on "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *See e.g. Serebryakov v. Golden Touch Transp. of NY, Inc.*, No. 12-CV-3990 (NGG)(RER), 2013 WL 3364393, at *2 (E.D.N.Y. July 2, 2013).

The Court's analysis as to whether to approve the parties' settlement agreement is twofold. Initially, the Court considers whether the agreement satisfies the standards summarized in *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332 (S.D.N.Y. 2012). Then, if those standards are met, the Court considers whether the agreement comports with the guidelines established in *Cheeks*. *See, Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015 WL 6550560, at *1 (E.D.N.Y. Oct. 28, 2015).

Under *Wolinsky*, the court considers (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky,* 900 F. Supp.2d at 335 (internal quotations omitted); *Gonzales*, 2015 WL 6550560, at *2.

In conducting this analysis, courts have also considered (1) the complexity, expense, and likely duration of litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation. *See Id.; Peralta v. Allied Contracting II Corp.,* No. 09–CV–953 (NGG)(RER), 2011 WL 3625319, at *1 (E.D.N.Y. Aug. 1, 2011);

*Volberg v. A.D. Winston Servs.,* No. 11–CV–2700 (SLT)(RLM), 2012 WL 1415051, at *1 (E.D.N.Y. Apr. 20, 2012).

A consideration of all these factors merits the court's approval of the settlement.

Joe's Tree provides residential and commercial tree cutting and removal services on Long Island. Massaro is its president.

The complaint alleges that Plaintiffs were employed by Joe's Tree as tree cutters. It alleges Maldonado worked 72 hours each week at a daily pay rate of $200 and that that Barahona and Diaz each worked 60 hours weekly at a daily pay rate of $100. The complaint further alleges Maldonado started with Joe's Tree in 2004; Barahona in March 2012; and Diaz in June 2012. In March of 2016 all three stopped working at Joe's Tree. Plaintiffs also claim Defendants failed to provide them wage statements and notices as required by the NYLL.

While Joe's Tree does not have records of the hours worked or wages paid to Plaintiffs, the information and documentation provided to Plaintiffs before, during and after mediation demonstrate that (a) Joe's Tree is a seasonal business that performed very little work, if any, between the months of December and March; (b) during the "busy" season, Joe's Tree did not operate regularly during the work week; (c) Joe's Tree did not have an annual gross volume of sales of at least $500,000 to warrant coverage under the FLSA; and (d) Massaro has been recently borrowing funds from his retirement account and his children's college funds to keep Joe's Tree afloat.

Joe's Tree is a seasonal business. While a severe storm, like Superstorm Sandy which struck in October 2012, can result in a boon for the tree service industry, steady work is not guaranteed. Furthermore, during the tree trimming season (March through November), Defendants maintain that Plaintiffs did not work regularly, nor more than 40 hours every week. Rather, crews were dispatched on an as-needed basis dependent upon whether a job was booked on a particular day. The work orders provided to Plaintiffs demonstrate the seasonal and sporadic nature of the tree service business. Finally, Defendants assert that Maldonado was a supervisor therefore exempt from overtime pay.

The tax returns, bank and account statements provided to Plaintiffs demonstrate that FLSA enterprise coverage does not apply to Joe's Tree. Furthermore, they demonstrate that during the past 24 months, Massaro has borrowed funds from personal savings, retirement and his children's college savings accounts to pay Joe's Tree business expenses.

As demonstrated in the following chart, accepting Plaintiffs' allegations regarding the number of hours worked, wages paid, and the period they were employed by Joe's Tree, after deducting 1/2 hour per day for lunch, Defendants calculate their maximum possible liability for overtime wages at $95,657.65 based upon the 6-year statute of limitations applicable to wage claims under the NYLL.

| Name | Dates | Hours/Wk | Lunch (1/2 hr) | OT Hours | Weekly Salary | Regular Rate | OT Rate | Weeks | OT Due |
|---|---|---|---|---|---|---|---|---|---|
| Maldonado | 7/11/10-3/31/16 | 72 | 2.5 | 29.5 | $1,000.00 | $14.39 | $7.19 | 298 | $63,244.60 |
| Barahona | 3/1/12-3/31/16 | 60 | 2.5 | 17.5 | $500.00 | $8.70 | $4.35 | 213 | $16,206.52 |
| Diaz | 3/1/12-3/31/16 | 60 | 2.5 | 17.5 | $500.00 | $8.70 | $4.35 | 213 | $16,206.52 |
| | | | | | | | | TOTAL | $95,657.65 |

Considering the seasonal nature of the business and assuming Plaintiffs only worked the hours they alleged during half of the total remaining weeks that comprise the regular tree trimming season, Defendants estimate their liability for overtime wages at approximately $35,000 as follows:

| Name | Dates | Hours/Wk | Lunch (1/2 hr) | OT Hours | Weekly Salary | Regular Rate | OT Rate | Weeks | OT Due |
|---|---|---|---|---|---|---|---|---|---|
| Maldonado | 7/11/10-3/31/16 | 72 | 2.5 | 29.5 | $1,000.00 | $14.39 | $7.19 | 110 | $23,345.32 |
| Barahona | 3/1/12-3/31/16 | 60 | 2.5 | 17.5 | $500.00 | $8.70 | $4.35 | 81 | $6,163.04 |
| Diaz | 3/1/12-3/31/16 | 60 | 2.5 | 17.5 | $500.00 | $8.70 | $4.35 | 74 | $5,630.43 |
| | | | | | | | | TOTAL | $35,138.80 |

Therefore, based upon the foregoing factual disputes, Defendant's ability to pay and the likelihood Plaintiffs would not recover any greater award of damages, the settlement is fair, reasonable, and should be approved.

I have been practicing labor and employment law exclusively for almost twenty-five years and have litigated and negotiated the resolution of numerous wage and hour cases. Plaintiffs' counsel has similar experience in the field of wage & hour litigation. Thus, the settlement was the product of arm's-length, good faith negotiations between experienced counsel who were assisted by Raymond Nardo, Esq. through the court-annexed mediation program, who also has significant experience with wage & hour claims.

In the event this case was not resolved, Defendants would seek summary judgment based upon the FLSA enterprise annual gross revenue threshold. *See*, *Yupa v. Country Stone & Fence Corp.*, No. CV 14-7384, 2017 WL 27957, at *5 (E.D.N.Y. Jan. 3, 2017). If summary judgment was granted on that issue and this court refused to exercise supplemental jurisdiction over Plaintiffs' NYLL claims, Plaintiffs would likely be required to refile their claims in state court thus incurring additional expense and time. *Id.* Thereafter, Plaintiffs would be required to establish, based solely on their testimony, the weekly hours they claim to have worked. Defendants are prepared to call upon witnesses to refute Plaintiffs' overtime claims and establish the seasonal and sporadic nature of its business. In any case, both sides would incur substantial deposition costs and attorneys' fees. Thus, the settlement enables the parties to avoid these anticipated burdens and expenses of litigation.

Because the facts and circumstances surrounding the settlement of Plaintiff's claims satisfy the criteria established by *Wolinsky*, the court can consider whether the settlement agreement passes muster under *Cheeks* which requires an analysis of whether the agreement contains:

> (1) a battery of highly restrictive confidentiality provisions ... in strong tension with the remedial purposes of the FLSA; (2) an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues; and (3) a provision that would set the fee for plaintiff's attorney at between 40 and 43.6 percent of the total settlement payment without adequate documentation to support such a fee award.

*Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), cert. denied, 136 S. Ct. 824, 193 L. Ed. 2d 718 (2016).

   The settlement agreement contains no confidentiality provision and the release applies only to wage claims similar to those set forth in the complaint

   Finally, the settlement agreement provides for the payment of attorneys' fees of $13,333.33 – an amount equal to one-third the total settlement after the reimbursement of costs of $1,020.00 – which courts in this circuit have regularly found to be acceptable in FLSA cases. See <u>Romero v. Westbury Jeep Chrysler Dodge, Inc.</u>, No. 15CV4145ADSSIL, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016).

   For all the foregoing reasons, it is respectfully submitted that the court's approval of the settlement in this case is warranted.

Respectfully submitted,
THE LAW OFFICE OF RALPH A. SOMMA

*/s/ Ralph A. Somma*

Ralph A. Somma
*Via ECF*